36    367
148   403

## Ranck *versus* Albright.

If one hired at an agreed price, for a certain time, continue in the same employment after the expiration of the term, without any new agreement, the presumption is, that the parties understood that the original rate of compensation was to be continued.

Such is the contract which the law implies, and there can be no recovery upon a *quantum meruit;* for the parties are presumed to have fixed the rate of compensation.

That services are demanded and performed, not anticipated at the time of hiring, is no basis for a legal implication of a promise to pay more than the contract stipulated; if the nature of the services be not different from that which the parties had in view when the hiring took place, and if the hiring was for a definite period of time.

ERROR to the Common Pleas of *Lancaster county.*

This was an action of *assumpsit* by Mary Albright against John Ranck, to recover compensation for services rendered in the capacity of housekeeper and domestic servant, during a period of two years and nine months.

In the beginning of October 1854, the plaintiff entered into the service of the defendant under an express contract of hiring, by which it was stipulated that she should receive, for her services, the sum of $3 per month.   She left his service on the 13th July 1858.

At the time of the hiring, the defendant's farm was leased on shares, he living in the farm-house, with one child, which composed the whole of the family.   In 1856, he resumed the management of his farm, and during that and the following year, he enlarged his barn, and built a wagon-shed, cider-press, &c., thereby adding to his family the farm hands, and also the workmen employed upon the buildings and improvements.   And the plaintiff contended that, for the increased amount of duties thus required of her, she was entitled to an increased amount of compensation.   The defendant had paid her a sum equal to three dollars per month for the whole period of her service, and this suit was brought to recover an amount of compensation over and above that sum.

On the trial, the plaintiff's counsel requested the court to charge the jury that, if defendant, while living retired, did hire plaintiff for $3 per month, and afterwards assumed the active control of a large farm, and erected buildings thereon, whereby the plaintiff's duties were increased beyond what were reasonably contemplated at the time of the hiring, she was entitled, from the time of such increase, to such compensation as her services were worth.

The defendant's counsel, on the other hand, requested the court to charge that, if the plaintiff agreed to work for defendant, at

[Ranck *v.* Albright.]

the rate of $3 a month, she was bound by such contract, and could recover only at the same rate, during the whole time she so worked or served him, even if such services became more onerous after the making of such contract, unless she proved that Ranck, the defendant, agreed to give more.

The court below (HAYES, J.) instructed the jury as follows:—

"There is no dispute in regard to the fact, that the alleged service was rendered by the plaintiff, or in regard to the time of her service. The controversy relates only to the compensation claimed for her service. The plaintiff claims that, after the first year, and after the defendant resumed the management of his large farm, and thereby increased his family and the burden of her service very materially, she was entitled to an increased compensation; whereas the defendant insists, that she continued the whole time to serve at the original rate of $3 a month.

"This must depend on the evidence. Had it been proved that the contract extended to the whole period of her service, at $3 a month, notwithstanding the change in the situation or circumstances of John Ranck's family—that this was the specific understanding of the parties, the plaintiff could not lawfully have claimed more. On the other hand, had there been nothing shown as to the wages agreed on, she would, on proof of services rendered, have been entitled to a just and reasonable compensation, such as the jury might consider her services were fairly worth.

"There is evidence sufficient to prove, that she entered upon the service as his housekeeper and maid at $3 a month; and she admits that she continued at those wages for one year; but she remained in his service for three years and nine months; and the question is, what did she serve for, the rest of that period? It is not proved, that there was any express agreement that she would serve the defendant for three years and nine months at $3 a month, nor for any definite period, except one year. And there is no evidence, that there was any actual contract for a larger sum; or any other express contract relative to the wages per month, than that first made of $3 per month. That contract being made with John Ranck, when he was living alone, to keep his house and attend to him (his family consisting then of himself and this plaintiff and one of her children) at so much a month, it is for the jury to say and decide, whether such an agreement extended to her service, after he resumed his farm and its management, adding to the number of his family his farm hands and also the workmen, carpenters, masons, and others employed upon the buildings and improvements which he erected in the years 1856 and 1857. What is the presumption? Is it reasonable to suppose that when she agreed to take charge of his house as a housekeeper and housemaid, in 1854, at $3 a month, she would have agreed that this sum should be her compensation in 1856, 1857, and 1858, had

[Ranck *v.* Albright.]

she contemplated the great and material change in the circumstances of his family and business, and the increased amount of her labour and responsibility? In the absence of proof that the original contract was expressly intended to apply to the entire period of her service, the jury would be justified in concluding that it extended to the time only during which the circumstances of John Ranck's family, and her service, continued substantially the same; and that for the rest of the time, when those circumstances were materially changed by John Ranck, her services (there being no proof of an agreement fixing the price) should be compensated, at so much as they were worth. This is my view of the matter, and I shall probably only repeat it by the answers to be given to the points submitted on behalf of the parties respectively.

"In answer to the plaintiff's point, I say that, if the contract were proved to be $3 a month as long as the plaintiff should continue in the service of the defendant, and the same was not changed by them, that sum must be the measure of compensation for the services rendered. But if the contract was understood by them to be for $3 a month, whilst John Ranck's family and establishment continued as it was when the plaintiff entered upon this service, then his establishment being materially changed when he resumed the management of his large farm, and increased greatly the number of his family, not only by the farm hands, but by others added occasionally when erecting his barn, wagon-shed, and ciderpress, the price agreed upon as a reasonable compensation, in the former condition of things, would not be reasonable in the change of circumstances, and the contract ought not to be regarded as applying to it. In that case, as no sum is ascertained to have been agreed on, as the compensation for her services, after he resumed his farming, and began to build and improve, it will remain for the jury to say what Mary Albright is entitled to, in reason and justice, for her services during such period of the time she thus served the defendant.

"And in answer to the defendant's point, I say to the jury, that if the agreement were at the rate of $3 a month for the whole time she should serve, the conclusion of this point would be true; but not if she only agreed to serve for one year at that rate, nor if she agreed generally to serve at $3 a month, in reference to the burden and value of her services in the particular condition and circumstances of John Ranck in 1854, when that condition and those circumstances were materially changed in the following years."

To this charge the defendant excepted; and a verdict and judgment having been rendered for the plaintiff, for $291, the defendant sued out this writ, and here assigned the same for error.

[Ranck *v.* Albright.]

*W. R. Wilson,* for the plaintiff in error, contended that the plaintiff, having entered the service of the defendant at a fixed rate of compensation, could not recover a greater amount, by reason of the duties required of her being increased during the latter part of the time that she remained in the service of the defendant; and cited Carr *v.* Chartiers Coal Company, 1 *Casey* 337; Selway *v.* Fogg, 5 *M. & W.* 83; Shaw *v.* Lewistown Turnpike Road Co., 3 *Penn. R.* 445; Wallace *v.* Floyd, 5 *Casey* 184.

*Hiester,* for the defendant in error.—There is no dispute as to the general doctrine laid down in Wallace *v.* Floyd, that "where a person makes an agreement with another to perform certain services for a definite period, at a stipulated salary, and continues in such service beyond the period agreed upon, in the absence of any new contract, the presumption of law is, that he continued under the same contract." But the question here is, whether this presumption is so controlling, that no increase of labour and responsibility, nor change of circumstances, can repel it.

To maintain the affirmative of this query, would give a legal presumption greater efficacy than positive contract. For the employment of housekeeper in a private family would surely not cover the services of female manager of a large hotel; nor would the compensation of gardener include the services of an extensive farmer: 2 *Parsons on Contracts* 11; Schuylkill Navigation Company *v.* Moore, 2 *Wh.* 477.

The opinion of the court was delivered by

STRONG, J.—The plaintiff below entered into the service of the defendant as his housekeeper and maid servant, at the stipulated wages of $3 a month. She remained with him as such housekeeper and maid, for a period of three years and nine months, without any express agreement either that her wages should continue as at first, or that they should be increased. When the contract was made, the defendant was living alone upon his farm, having none of his family with him. He was not then engaged in farming his place. About a year afterwards, he resumed farming, and continued it until the plaintiff left his service. During this time, he built a barn, a wagon-shed, and a cider-press upon the place, and boarded the workmen, as well as the farm hands, at his own house. The plaintiff now claims that she is entitled to recover wages at a higher rate than $3 a month, for her services after the defendant resumed farming his place.

It is not denied, as indeed it cannot be, that when a person hired at an agreed price, for a certain time, either week, month, or year, continues in the same employment after the expiration of the time without any new agreement, the presumption is, that the

parties understand that the original rate of compensation is to be continued. Such is the contract which the law implies, and there can be no recovery upon a *quantum meruit*, for the parties are presumed to have fixed the rate of compensation. This was ruled in Wallace v. Floyd, 5 *Casey* 184, as also in The New Hampshire Iron Factory v. Richardson, 5 *N. H.* 295, and is in accordance with the common understanding and common usage. But it is supposed, and so the jury were instructed, that the change in the circumstances of Ranck, the defendant, his increased business attendant upon his resumption of farming, and upon his erection of buildings, and the consequent increase of the plaintiff's care and labour, take this case out of the general rule, and that the law presumes another contract, to wit, that she shall be paid what her services were reasonably worth. The reason why a person hired at a fixed salary is presumed to continue at the same salary, after his original term of service has expired, if he remain in the same employment, is, that if he had expected an increase, he would have applied for it to his employer, in accordance with the usual course of human dealings. By making no such application, he has suffered his employer to rest in the belief that he was satisfied with the arrangement already made, and, of course, there has been no assent to the payment of greater wages.

And this reason is applicable to a case where the employment has not been changed, though its duties have been increased. The law implies no contract when it can find one which is express. In the present case, the nature of Mrs. Albright's service was not changed. She went as housekeeper and maid, and she was nothing else until she left the defendant's service. Doubtless, her duties were rendered more laborious by his return to farming; but by her original contract of hiring, she had sold to him the right to all her time and labour, if they were needed for housekeeping. She gave no more when the labours of his household had increased. In such a service as that in which she engaged, the duties are, from time to time, enlarged and diminished. The contract is necessarily made with variations of service in view, and if it is changed with an increase or diminution of the needful labour, it amounts to no contract at all. If Ranck had been farming when the plaintiff hired her services to him at $3 a month, would it be said that she would have been entitled to less if he had ceased farming? It must be, if the change of circumstances changes the contract, and makes a new bargain between the parties. I mean by "change of circumstances," such a change as only reduces or increases the care and labour requisite for the employment. If the character of the service be altered, as if instead of continuing a housekeeper she had become a seamstress, or if a gardener were turned into a

[Ranck *v.* Albright.]

coachman, a different principle would apply. That services are demanded and performed not anticipated at the time of the hiring, is no basis for a legal implication of a promise to pay more than the contract stipulated, if the nature of the services be not different from that which the parties had in view when the hiring took place, and if the hiring was for a period of time. This was held in Carr *v.* The Chartiers Coal Company, 1 *Casey* 337.

It follows, from what we have said, that, in our opinion, this case was erroneously put to the jury. In the absence of any proof of a new contract, the law presumes that the plaintiff continued at service until she left, at the same wages with which she commenced. And this presumption is not destroyed by the fact, that she was required to do more work than she at first anticipated, in consequence of the defendant's resumption of the active labours of farming. If she was dissatisfied with the original arrangement, she should have demanded additional compensation. Her silence was an assent that the defendant should have her time and labour for what he had at first agreed to pay.

Judgment reversed, and a *venire de novo* awarded.