## Grossman, Appellant, v. Thunder.

*Decedents' estates—Claim for services—Extra services—Evidence—Contract.*
A domestic and nurse in the home of a decedent, who has received fixed wages for her services as such, cannot recover in an action against the executor of the decedent for alleged extra services in the absence of an express contract to that effect, or an agreement to provide for such compensation by a legacy. Every intendment should be taken most strongly against the validity of such a claim.

Loose declarations made to outside parties, indefinite understandings, suggested gratuities, anticipated benefactions and testamentary intentions not carried out, about which there may be some vague and unconvincing testimony, are not sufficient to establish an express contract, either to pay for the extra services at the death of the testatrix or to provide for such compensation by a legacy.

Argued May 16, 1905. Appeal, No. 248, Jan. T., 1904, by plaintiff, from judgment of C. P. Lancaster Co., Jan. T., 1902, No. 6, on verdict for defendant in case of Anna Grossman v. Mary Forney Thunder, executrix of Susan C. Forney, deceased. Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ. Affirmed.

Assumpsit for services. Before HASSLER, J.

The court charged as follows :

The action is one to recover for services on an express contract, as well as on a quantum meruit, which services were rendered to Susan C. Forney by the plaintiff up to and prior to November 12, 1901. On that day the plaintiff signed a receipt which reads as follows :

"November 12, 1901.

"I, Annie Grossman, of the city of Lancaster, Pa., being in the employ of Miss Susan C. Forney up to this date, do hereby acknowledge that I received full pay and compensation for all services, labor, care and attention that I have given unto said Miss Susan C. Forney, and I have no claim against her or her estate for any services whatsoever, acknowledging payment in full by this receipt. Witness my hand the day and year aforesaid." Signed Anna Grossman, and witnessed by Mary L. Wiley and Tillie May Forney.

While a receipt for money paid is prima facie evidence of its payment, it is not conclusive and can be explained.   It can be explained or be impeached by parol testimony.

When, however, parol testimony tending to impeach such a receipt, is so evenly balanced by contradictory evidence of like character, as it is in this case, the receipt must control and cannot be set aside.

The receipt which the plaintiff signed appeared upon its face to be in full for all services, labor, care and attention given to Miss Susan C. Forney ; and that she, the plaintiff, had no further claim against the said Susan C. Forney or her estate for any services whatsoever.

There was no ambiguity in its terms.   There is no evidence that there was anything included in the receipt through a mistake, or through fraud or accident.   Four of the six witnesses who were present when it was signed, including the plaintiff herself, have testified in the case.   Two of them say it was read to her before she signed it, and that she understood what it contained.   Another of the four witnesses, a sister of plaintiff, says it was read after it was signed.   No objection, however, seems to have been made to it at that time, and its terms are very clear in covering just what the plaintiff is attempting to recover in this action.

The contention that the claim was not to be paid until after testatrix's death, cannot avail, for the reason that the services were rendered, and this receipt says it is in full for all services rendered to testatrix to date, and that she, the plaintiff, had no further claim against Susan C. Forney or her estate for any services whatsoever.

It is true that the plaintiff says at the time she signed the receipt, she asked if this would interfere with any other claim for money she was to get at the death of testatrix, and was told by Mrs. Thunder that she did not think so, but that she would have to ask Mr. Weigley about it.

This could not have been an inducement for her to sign the paper, as it is not even contended that she was told this did not interfere with any other claim she might have.

Her sister says she asked this same question and was given the same answer by Mrs. Thunder that she would have to ask a Mr. Weigley.   The others, Miss Forney and Mrs. Thunder,

present at the time, say no such question was asked.  One of these witnesses, Miss Forney, says the paper was read to her and she understood it.  She certainly could have understood that it was to cover all claims for wages, care, attention or services, for the terms are very plain and clear.  If she was told that it would not affect any claim for what plaintiff is attempting to recover in this action, and was thus led to sign it through this representation, it would have been a fraud practiced upon her, and the receipt would have been treated as a nullity so far as this action is concerned.  The evidence of such fraud, however, must be clear, precise and indubitable.  We do not think the testimony in this case meets these requirements.

There was a consideration for the receipt in the payment of all the money which plaintiff then said was due her.

If a written paper can be thus changed by oral testimony, we cannot conceive of any writing which cannot be brushed aside by the mere oath of interested witnesses, with no circumstances of corroboration and in the face of flatly contradictory testimony.

We do not feel justified on this testimony in reforming the receipt so as to make it mean something different from the clear meaning of the words which it contains, and we therefore must affirm the second point submitted by defendant and instruct you to find a verdict for defendant.

*Error assigned* was in giving binding instructions for defendant.

*William H. Keller*, with him *John A. Coyle*, for appellant.— The value of services to a person who is suffering from a loathsome disease cannot be measured by the compensation given to a domestic servant: McDonough's Estate, 6 Pa. C. C. Rep. 527.

The case of Harrington v. Hickman, 148 Pa. 401, is very much like this case, not only as to the payment of wages for domestic service, but also as to the time and manner of payment for her extra care and attention : Currey's Est., 26 Pa. Superior Ct. 479.

A mere informal receipt, although stated to be in full, is not conclusive, but is susceptible of explanation: Girard Fire &

Marine Ins. Co. v. Canan, 195 Pa. 589; Keim v. Kaufman, 4 Pa. Dist. Rep. 234; Horton's App., 38 Pa. 294; Batdorf v. Albert, 59 Pa. 59.

*W. U. Hensel,* for appellee.—The instructions of the court were proper: Ogden v. Traction Co., 202 Pa. 480; Cook's Estate, 2 Pa. Dist. Rep. 193; Miller's Est., 136 Pa. 239; Pollock v. Ray, 85 Pa. 428; Thompson v. Stevens, 71 Pa. 161; Neal v. Gilmore, 79 Pa. 421; King's Estate, 150 Pa. 143; Wojciechowski v. Spreckels' Sugar Refining Co., 177 Pa. 57; Laird v. Union Traction Co., 208 Pa. 574; Guhl v. Frank, 22 Pa. Superior Ct. 531; Piersol's Est., 27 Pa. Superior Ct. 204.

OPINION BY MR. JUSTICE ELKIN, May 22, 1905:

We have carefully examined and considered the testimony in this case, the charge of the learned court below, the opinion refusing a new trial, and the very excellent argument of counsel for appellant as well as appellee, but do not discover any reversible error in instructing the jury to find a verdict in favor of the defendant. This belongs to a class of cases in which the courts have frequently said every intendment should be most strongly taken against the validity of the claim. The learned trial judge, in discussing the question whether a contract had been entered into between the parties, said: "There is no evidence of any liability here that could not be released upon the payment of what the plaintiff claimed was actually due. There is no proof of any contract. Plaintiff was paid $2.00 a week, and after the services became onerous was paid $3.00 a week. The burden was on her to show that this was not a payment for everything she did. Testatrix might have promised, because of her gratitude to the plaintiff, to give her extra compensation in the shape of a legacy, but there was no obligation on the testatrix to give this legacy, the plaintiff taking her chances, if the amount paid per week was in full of her services, and in the absence of proof to the contrary we must assume it was. There was no evidence that the amount paid per week was not in full payment of her services, and we are satisfied that a receipt upon payment of the amount claimed was sufficient consideration for the release of any such doubtful claim as this, which rested solely in expressions of

gratitude by the testatrix." All of which is justified by the evidence.

To sustain this claim, the burden was on the appellant to show by proof of the most indubitable character, not only that the receipt was not intended to cover all compensation, but that there was a contract entered into to pay for extra services not included in her ordinary employment for which she admittedly received the amount of wages agreed to be paid her. This receipt, entirely independent of the question whether or not it was an absolute bar to a recovery, is strongly persuasive that the alleged contract relied upon by appellant was not entered into by the parties. The appellant, a domestic and nurse in the home of the testatrix, having received fixed wages for her services as such, cannot recover in this action for alleged extra services in the absence of an express contract to that effect or an agreement to provide for such compensation by a legacy. The evidence is not sufficient to support either contention. Loose declarations made to outside parties, indefinite understandings, suggested gratuities, anticipated benefactions and testamentary intentions not carried out, about which there is some vague and unconvincing testimony, are not sufficient to establish an express contract, either to pay for the extra services at the death of the testatrix, or to provide for such compensation by a legacy. There is no evidence that the appellant agreed to remain with the testatrix and accept the terms of what she now alleges to be a contract. All of these declarations, as well as of the acts of the parties, indicate that the appellant was willing to accept the fixed wages she was receiving from week to week and take her chances of becoming a beneficiary in the will of the testatrix. We are not convinced that anything more was intended by the parties, nor that any contract was entered into upon which this action can be sustained. This being our view of the case, it is unnecessary to discuss the question of the receipt being a bar to this claim.

Judgment affirmed.